IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DUE PROCESS, LTD, a foreign
corporation and JOHN GLIHA,
        Plaintiffs,

v.                                        CASE NO. 3:03cv580/MCR/MD

ALTERNATIVE DEBT SERVICES,
INC., a Florida Corporation, f/d/b/a
AGGRESSIVE MARKETING and
MANAGEMENT, INC., and ALTERNATIVE
DEBT SOLUTIONS; JEN DEVINE; TOM
ROBERTS; JOHN BRIAN McLANE, JR.;
MEAGHAN MAILTO; AND PATRICK OLIVE,
        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This case is before the court upon referral from the district court for preparation of a report and recommendation on plaintiffs' motion for default judgment. (Doc. 110). Plaintiffs have also separately submitted exhibits in support of their motion.[1] The defaulted defendants have not filed a response.

I. Procedural History

Plaintiffs filed the instant complaint on December 22, 2003 against Alternative Debt Services, Inc., a Florida corporation, f/d/b/a Aggressive Marketing and Management, Inc., and Alternative Debt Solutions (hereafter collectively referred to as "ADS"), Jen Devine, Tom Roberts, John Brian McLane, Jr., Meaghan Mailto, and Patrick Olive. Counsel for

---

[1] The exhibits were electronically submitted as documents number 111 through 119. Because they were not submitted sequentially, they will be referred to by both the exhibit numbers assigned by the plaintiff and the docket entry and "part" number, as reflected in the court's electronic record.

ADS, Jen Devine and Tom Roberts moved to withdraw (doc. 20, 32 & 33), and were allowed to do so. (Doc. 34). On December 14, 2004, a default was entered against the unrepresented corporate defendants for their failure to file an answer in this case. (Doc. 42, 43). Summons was returned unexecuted as to defendant Mailto and she was apparently never served. (Doc. 39). Defendant McLane was voluntarily dismissed from this action (doc. 75 & 76), as was defendant Olive (doc. 105, 109), and default was entered against defendants Devine and Roberts (doc. 90, 92 & 93). Plaintiffs state that they do not seek damages against Devine and Roberts because their non-compliance during discovery precluded plaintiffs from obtaining information necessary for determining actual or net profit damages against either defendant.

II. Background

Plaintiffs represent that in or about July of 2002, while doing business as Aggressive Marketing and Management, Inc., and Alternative Debt Solutions, defendant ADS and plaintiffs entered into an oral agreement wherein ADS agreed to market and sell plaintiffs' book and program called "Winning the Collection Game." ADS promised to pay plaintiffs twenty percent (20%) of gross sales, plus $250.00 per sale with defendant ADS thereby earning approximately a 70% commission on gross sales.[2]

Plaintiffs further represent that they and ADS agreed that they would use ADS's merchant processor account, through ATEC, Inc. for receiving payments from credit card purchases and that ADS could delay making payments of the twenty percent (20%) of gross sales, plus $250.00 per sale to plaintiffs until February 2003. Plaintiffs state that they performed all the terms and conditions of their agreement with ADS, but ADS failed and refused to pay plaintiffs as agreed. The verbal agreement between plaintiffs and ADS was

---

[2]Plaintiffs cite defendant Olive's deposition at page 93, l. 9-25 and Exhibit 16 as support for these factual assertions. Olive's deposition is found at plaintiffs' exhibit 1 (doc. 111, part 2). However, neither page 93 of the exhibit as filed in CMECF nor page 93 of the deposition itself (page 123-124 in CMECF) mentions the oral agreement allegedly entered into by the parties. The deponent was merely asked whether the document that is now in the record as exhibit 16, (doc. 119, part 5 and 6), reflects the records that Aggressive kept. This exhibit contains only the Excel spreadsheets showing the money allegedly due the plaintiffs.

terminable at will by either party. Plaintiffs thus terminated their reseller agreement with ADS, in writing, effective no later than September 18, 2003 via cease and desist letter. (Exh. 1, doc. 111, part 2 at 68-69; exh. 5, doc. 111, part 10).

III.  Breach of Contract Damages

Plaintiffs first seek damages for breach of contract due to ADS's failure to pay plaintiffs money due them for ADS's sale of "Winning the Collection Game."  The purpose of a damages award in a breach of contract case is to restore the injured party to the condition it would have been in had the contract been performed and the breach not occurred. *In re Jet 1 Center, Inc.*, 335 B.R. 771 (M.D. Fla. 2005) (citing *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So.2d 1278 (Fla. 5th DCA 2002)); *Sharick v. Southeastern University of Health Sciences,* 780 So.2d 142, 143 (Fla. 3rd DCA 2001); *Koplowitz v. Girard*, 658 So.2d 1183, 1184 (Fla. 4th DCA 1995).  Plaintiffs state that as a result of ADS's breach of contract, they sustained damages in the amount of at least $196,877.84, which is the amount of money ADS should have paid plaintiff had ADS made payments to plaintiffs as required under the terms of the verbal reseller agreement.  (Exh. 16, doc. 119, part 5 & 6).

Plaintiffs' exhibit 16 reflects sales of "Winning the Collection Game" from August 14, 2002 through August of 2003.  Patrick Olive, former president of ADS testified at his deposition that he recognized the spread sheets that comprise exhibit 16 as some of the records ADS, McLane and plaintiffs kept on sales of plaintiffs' work.  (Exh. 1 at 93, doc. 111, part 2 at 123-124).  According to the figures provided on the chart that is the first page of this exhibit, 258 units were sold, and the gross income to ADS was $661,889.15. Twenty percent of this total is $132,377.83, and 258 units multiplied by $250.00 per unit yields $64,500.[3]  In accordance with these figures, the plaintiffs' total damages for breach of contract were $196,877.84.[4]

---

[3]Plaintiffs' chart erroneously reflects this figure as $62,500.  This error was not carried over to the column reflecting the total due to plaintiffs.

[4]The figures for July and August of 2003 are not supported by the attached charts, which provide information only through June of 2003.  On the other hand, there are some sales that are not included in these figures.  In his deposition, defendant Olive testified about at least two sales that occurred during or

IV. <u>Copyright Infringement Damages</u>

Plaintiffs also seek damages for copyright infringement.  Plaintiffs note that via cease and desist letter dated September 18, 2003, they prohibited further marketing and selling of their books and programs by ADS and their agents. (Exh. 15, doc. 111, part 10).  Even before that time, ADS was not authorized to make copies of plaintiffs' work without John Gliha's permission.  Plaintiffs state that ADS made and sold unauthorized copies before that date, and that ADS infringed plaintiffs' copyrights by copying, publishing, marketing and selling the books and program "Winning the Collection Game" without plaintiffs' knowledge and authorization and after plaintiffs terminated their reseller agreement with ADS and all ADS's agents due to ADS's failure to pay plaintiffs.  Patrick Olive admitted at his deposition that ADS received plaintiffs' cease and desist letter, but that it continued selling plaintiffs' work after that time.  (Exh. 1 at 52-53, 94-95, 96, doc. 111, part 2 at 69-70, 125, 127).  He also admitted that ADS intentionally and knowingly made infringing copies at local copy shops and sold these infringing copies of plaintiffs' works after termination of the reseller agreement.  (Exh. 1 at 55-58, doc.111, part 2 at 72-76).

Plaintiffs further contend that in October of 2003, ADS infringed plaintiffs' copyrighted works by publishing and placing on the market a book and program entitled "Debt Termination" which was copied virtually word for word from plaintiffs' copyrighted book and program, and which contained, as did plaintiffs' work, an accompanying CD-ROM and a support service called "Workgroup."  (Doc. 1, ¶¶ 23, 27, 28).  It appears from the deposition testimony of Patrick Olive that defendant Jen Devine "lifted" words, ideas and even the forms from plaintiffs' original publication and incorporated them into what she referred to as a "new work."  (Exh. 1 at 100, doc. 111, part 2 at 132).

The Copyright Act allows a prevailing plaintiff to seek (1) actual damages and infringer's profits or (2) statutory damages; and (3) costs including a reasonable attorney's fee.  Title 17 U.S.C. § 504, 505.  Plaintiffs states that due to the non-compliance with or

---

after September of 2003, which do not appear to be incorporated into the plaintiffs' calculations.  (Exh. 1 at 94-96, doc. 111, part 2, at 124-128).

evasion of discovery requests by some defendants and material witnesses, they were unable to obtain information necessary to establish actual damages "with any reasonable certainty." A court has a duty, however, to ensure that damages are established with reasonable certainty. See *American Red Cross v. Community Blood Center,* 257 F.3d 859, 864 (8th Cir. 2001) (prevailing party had burden of proving its uncertain damages to a reasonable degree of certainty); *Everyday Learning Corp. V. Larson,* 242 F.3d 815 (8th Cir. 2001 (same); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2nd Cir. 1997) (stating that the court "should take the necessary steps to establish damages with reasonable certainty"); *Fustok v. Conticommodity Services, Inc.*, 873 F.2d 38, 40 (2nd Cir. 1989) (stating that a district court must ensure that there is a basis for damages specified in a default judgment).

Title 17 U.S.C. § 504(b) provides that the copyright owner is entitled to recover actual damages suffered as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. The statute further provides that in establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue. *Id.* Thus, plaintiffs' burden, once infringement has been established, is minimal. It is then incumbent upon ADS as the infringer to prove deductible expenses and the elements of profit that are attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b).

Plaintiff maintains that the record reflects that ADS's gross revenue from sales of infringing works during the time period in question totaled at least $1,673,702.27 based on bank records showing deposits into ADS's accounts. (Exh. 18, doc. 111, part 12; compiling exh. 3, 4, 5 & 6, doc. 112 parts 2-6; doc. 113, parts 2-4; doc. 114, parts 2-7; doc, 115 parts 2-8; doc. 111, part 4). Plaintiffs state Patrick Olive testified that his main concern as president was to make sure that deposits from sales of the infringing debt elimination programs were deposited into ADS's bank accounts (Citing exh. 1, at 28 l. 1-6, doc. 111, part 2 at 36-37). Actually, Olive stated that "the main thing he did was to look at [the bank account] for deposits when they were made into the account." Plaintiffs state that "Patrick Olive agreed that the deposits into the ADS bank accounts as shown by Exhibits # 3, 4, 5

& 6 accurately reflect the sales income from the debt elimination program sales." (Citing Exh. 1, at 81-82, 84-85; doc. 111, part 2 at 107-108, 111-112).  Again, this seems a stretch of what the actual testimony was, as Olive's testimony about the figures was more non-committal; he indicated that he was not sure what the numbers were, but that the figures offered by counsel were "something like what it was." (Exh. 1, at 84, doc. 111, part 2 at 112).  Plaintiffs further contend that this volume of sales is supported by Olive's admission that ADS entered into reseller agreements with numerous individuals and companies who would also sell infringing copies of plaintiffs' copyrighted work for a fee paid to ADS, although there were less than ten reseller agreements.  (Exh. 1, at 42-48, doc. 111, part 2 at 55-63).

To further substantiate the figure, plaintiffs offer that ATEC's credit card merchant account shows sales revenue totaling $251,797.23 from credit card payments from a single credit card merchant account.  (Exh. 9, doc. 119, part 2-4).  They also note large transfers and payments made out of the ADS accounts into the accounts of Brian McLane, Patrick Olive and Michael Savary.  (Exh. 7, doc. 116, parts 2-4; Exh. 8, doc. 117 parts 1-4 and doc. 119 parts 2-9; Exh. 20, doc. 119 parts 7-8).  However, the origin of the deposits into the defendants' accounts is not clear from the banking records submitted as exhibits.

The plaintiffs' argument assumes that the money deposited into ADS's accounts was only revenue derived from sales of "Winning the Collection Game."  In Olive's deposition, he makes reference to the generation of "leads" (exh. 1 at 22, 68, doc. 111, part 2 at 29, 90).  There is no record evidence that any of these other "leads" resulted in income producing for ADS, and it appears that ADS was formed entirely to do the "debt termination thing." (Exh. 1, at 88, doc. 111, part 2 at 116).

V. Pre-Judgment Interest

Plaintiffs also seek an award of pre-judgment interest under the Copyright Act.  The court concurs with plaintiff's argument that an award of prejudgment interest is appropriate. See *McRoberts Software, Inc. v. Media 100, Inc.,* 329 F.3d 557, 566 (7th Cir. 2003)

(prejudgment interest available for willful violations of federal law); *see also Polar Bear Productions v. Timex Inc.,* 384 F.3d 700 (9th Cir. 2004); *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 51 (1st Cir. 2003); *Kleier Advertising, Inc. v. Premier Pontiac, Inc.,* 921 F.2d 1036, 1040 (10th Cir. 1990); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1550 (9th Cir. 1989). However, it disagrees with some of plaintiffs' calculations.

The rate of prejudgment interest can be determined by looking to state law. See *Baptist Physician Hospital Organization, Inc. v. Humana Military Healthcare Services Inc.*, ___ F.3d ___, 2007 WL 836899 *14 (6th Cir. 2007) (using maximum rate allowable under state law); *Seb S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1321 (11th Cir. 2007) (referring to statutory rate of interest); *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587 (5th Cir. 2006) (state law governs pre-judgment interest, 28 U.S.C. § 1961 governs post-judgment interest). Interest rates under Florida law are established pursuant to § 55.03, Florida Statutes. In 2003, the rate was 6%, or .0001644 per day, in 2004 the rate was 7% or .000918 per day, in 2005 the rate was also 7%, in 2006 the rate was 9% or .0002466 per day, and in 2007 the rate has been set at 11% or .0003014 per day.

Plaintiffs state that their total damages for breach of contract was $196,877.84 and that this amount was liquidated no later than August 31, 2003. (See exh. 18, doc. 111, part 12). Thus, prejudgment interest should be awarded as follows:

Year 2003– .0001644 x $196,877.84 = $32.37 per day x 122 days= $3,948.74
Year 2004-- $196,877.84 x 7% = $13,781.45
Year 2005-- $196,877.84 x 7% = $13,781.45
Year 2006-- $196,877.84 x 9% = $17,719.01
Year 2007– .000314 x $196,877.84 = $59.34 per day **through date of judgment.**

Plaintiffs state that their damages for copyright infringement, unfair competition, and unfair and deceptive trade practices against ADS total $1,673,702.27 and that this amount was liquidated no later than December 31, 2004. In fact, the damages shown in plaintiffs' exhibit 18 (doc. 111, part 12) would not have liquidated until April 30, 2005, the last date

one of ADS's bank accounts was open. Therefore, pre-judgment interest should be calculated from that date, as follows:

> Year 2005– .0001918 x $1,673,702.27 = $321.02 per day x 245 days = $78,648.93
>
> Year 2006– $1,673,702.27 x 9% = $150,633.20.
>
> Year 2007– .000314 x $1,673,702.27 = $525.54 per day **through date of judgment**

VI. <u>Costs and Attorney's Fees</u>

Section 505 of the Copyright Act allows the court, in its discretion, to award full costs against any party other than the United States or an officer thereof. A reasonable attorney's fee may be awarded to the prevailing party as part of the costs. The Eleventh Circuit has stated that a fee award is generally discretionary, seldom mandatory. *Cable Home Communication Corp. v. Network Productions, Inc.*, 902 F2d 829, 853 (11th Cir. 1990) (quoting *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987)). A showing of bad faith or frivolity is not required before fees can be awarded. *Id. (quoting Casella* and *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir.1982)). The only two requirements are that the fee be awarded to the prevailing party, and that it be reasonable. *Id.*

Plaintiffs argue that they are entitled to attorney's fees and costs because defendants admittedly ignored the cease and desist letter of September 18, 2003, and therefore the plaintiffs were forced to file this action. Plaintiffs also contend that the award is justified by the willfulness of defendants' conduct and failure to participate in these proceedings, including the failure to respond to the complaint or participate in discovery, making it nearly impossible for plaintiffs to prosecute the case against ADS and the other individual defendants. Finally, they contend that an award of attorney's fees and costs will deter future infringements, penalize ADS for its unlawful conduct and compensate plaintiffs for amounts they were forced to expend to protect their copyrights.

The court concurs that it is appropriate for the plaintiffs to recover costs and fees in this case, in an amount to be determined upon the submission of appropriate supporting documentation. The court is mindful of the fact, however, that plaintiffs have not sought

default judgment against any of the individual defendants.

Based on the foregoing, it is respectfully RECOMMENDED:

The plaintiffs' motion for final default judgment (doc. 110) be GRANTED and default judgment be entered against defendants Alternative Debt Services, Inc., a Florida Corporation f/d/b/a Aggressive Marketing and Management, Inc., and Alternative Debt Solutions for damages for breach of contract in the amount of $196,877.84, for damages for copyright infringement in the amount of $1,673,702.27, and with prejudgment interest as of the date of the final judgment, in accordance with the calculations set forth herein.

That plaintiffs' counsel be required to submit appropriate supporting documentation to sustain an award of reasonable attorneys' fees and costs within thirty days from the date of an order adopting this recommendation.

At Pensacola, Florida, this 11th day of April, 2007.


/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).